| | |
|---|---|
| **JERRY GREEN and LINDA PETROU,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **KAREN BRINSON BELL,** ) <br> ) <br> **Defendant.** ) <br> ) <br> ) | **Order** |

**THIS MATTER** is before the Court on the Motion to Dismiss filed by Karen Brinson Bell (Doc. No. 19), the Motion to Intervene filed by the League of Women Voters of North Carolina and the North Carolina A. Philip Randolph Institute, Inc. (Doc. No. 15), and the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 44). For the reasons below, the M&R is **NOT ADOPTED**, the Motion to Dismiss is **DENIED**, and the Motion to Intervene is **DENIED**.

## I.  BACKGROUND[1]

In this case, two North Carolina voters claim that their state is violating the National Voter Registration Act of 1993 ("NVRA"). Compl. ¶¶ 1–4, Doc. No. 1; *see* 52 U.S.C. § 20507. They accuse the state of failing to "maintain accurate voter rolls," a failure that allegedly allows "ineligible voters [to] vote in North Carolina elections." Compl. ¶ 11. To compel compliance, the Plaintiffs sued Karen Brinson Bell, the Executive Director of the North Carolina Board of Elections. *Id.* ¶ 13.

---

[1] No party objects to the M&R's description of the factual and procedural background of this case. Accordingly, the Court adopts that description. In this order, the Court sets out only the facts that are relevant to the issues presented.

Bell moved to dismiss the Complaint on three grounds. Def.'s Mem. Supp. Mot. Dismiss 1, Doc. No. 20. She first argues that the Plaintiffs lack statutory standing because they failed to give proper pre-suit notice, which is a prerequisite to litigation under the NVRA. *Id.* She also attacks the Plaintiffs' ability to show an injury in fact sufficient to establish Article III standing. *Id.* And she claims that the Plaintiffs fail to state a plausible claim. *Id.* at 19–25. Two voter-registration organizations—the League of Women Voters of North Carolina and the North Carolina A. Philip Randolph Institute, Inc.—moved to intervene as defendants. Doc. No. 15.

The M&R recommends dismissing the Complaint for lack of sufficient pre-suit notice. M&R 19. It states that the Plaintiffs' notice had to provide sufficient details about "how" Bell was violating the NVRA. *Id.* at 17 (emphasis omitted). Finding their notice "too vague," the M&R concludes that the Plaintiffs' NVRA claim fails from the start. *Id.* at 14.[2] The Plaintiffs object, arguing that their notice did not have to "identify exactly how" Bell was violating the law. Pls.' Objs. 8, Doc. No. 49. They insist that the terms of the NVRA required their notice to only "state the general requirement that the State is violating and the basic reasons for that conclusion." *Id.* (internal quotation marks omitted).

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A), (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). However, "when

---

[2] Given its conclusion that the Complaint should be dismissed, the M&R does not evaluate whether the League of Women Voters and the A. Philip Randolph Institute should be allowed to intervene. M&R 19, Doc. No. 44. Nor does it assess the Plaintiffs' Article III standing or address Bell's argument that the Complaint fails to state a plausible claim.

objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.* Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

The standard of review for a motion to dismiss is well known. A motion to dismiss brought under Rule 12(b)(6) "'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fed. Nat'l Mortg. Ass'n v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked under Rule 12(b)(6) will survive if it contains enough factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An allegation is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary, and the statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration omitted). Additionally, when ruling on a motion to dismiss, a court "should view the complaint in a light most favorable to the plaintiff," *Mylan Lab'ys, Inc.*

3

*v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), and it must accept the complaint's factual allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And at the motion-to-dismiss stage, "[c]ourts cannot weigh the facts or assess the evidence," though "a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014) (emphasis omitted).

### III. DISCUSSION

#### A. Pre-Suit Notice

Before a "person who is aggrieved by a violation" of the NVRA may sue under that statute, he or she must "provide written notice of the violation" to the state. 52 U.S.C § 20510(b)(1). This case presents a question of statutory interpretation: how much detail must that notice contain?

In "all cases involving statutory interpretation," courts "begin" with "the text of the governing statute." *United States v. Muhammad*, 16 F.4th 126, 128 (4th Cir. 2021) (citing *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 516 (4th Cir. 2021)). When statutory text is "plain," the "sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (quoting *United States v. Wayda*, 966 F.3d 294, 303 (4th Cir. 2020)). In interpreting a statute, the text is given its "ordinary, contemporary, common meaning." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)).

The NVRA conditions the right to bring a private suit on the provision of written notice:

(1) A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under

4

paragraph (1), . . . the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

52 U.S.C. § 20510(b)(1)–(2).

As relevant here, the NVRA requires a potential plaintiff to "provide written notice" of "the violation" that he or she is "aggrieved by." 52 U.S.C. § 20510(b)(1). Notice is an "announcement." *Webster's Ninth New Collegiate Dictionary* 808 (1991) (capitalization modified); *see also Webster's Third New International Dictionary* 1544 (1993) (defining "notice" as "formal or informal warning or intimation of something: announcement" (capitalization modified)); *Notice*, *Black's Law Dictionary* (11th ed. 2019) (defining "notice" as "[a] written or printed announcement"). Thus, under the NVRA, a pre-suit notice must "announce[]" a violation of the statute. *Webster's Ninth New Collegiate Dictionary*, *supra* (capitalization modified); *accord Ga. State Conf. of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320, 1334 (N.D. Ga. 2012) (concluding that the NVRA's notice requirement was satisfied where prospective plaintiffs "set out" the "general proposition" that the state was "not complying with the mandates of the NVRA"); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 922 (S.D. Ind. 2012) (ruling that a letter "satisfied the pre-suit notice requirement" because it "ma[de] it clear that [the plaintiff] [was] asserting a violation of the NVRA and plan[ned] to initiate litigation if its concerns [were] not addressed in a timely manner"); *see also Notice*, *Black's Law Dictionary* (6th ed. 1990) (stating that notice "does not necessarily mean knowledge of all the facts").

Here, the Plaintiffs' pre-suit notice announces a violation of the NVRA, so it satisfies the statute's notice requirement. The Plaintiffs' notice explains that "Section 8 of the NVRA obligates states to 'conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters' due to death or change of residence." Pls.'

5

Pre-Suit Notice 1, Doc. No. 1-1 (quoting 52 U.S.C. § 20507(a)(4)). It then states that "North Carolina and [thirty-six] counties are violating Section 8 of the NVRA." *Id.* at 2; *see also id.* at 3 (asserting that "North Carolina's failure to provide accurate voter rolls violates federal law").

Bell argues that the Plaintiffs failed to satisfy the notice requirement because their notice does not provide a detailed explanation of how she was violating the law. Def.'s Resp. 1–2, Doc. No. 50. But the statute requires notice of "the *violation*." 52 U.S.C. § 20510(b)(1) (emphasis added). It does not require notice of the violation's *cause*. So there was no need for the Plaintiffs to explain how Bell was causing the violation. *See Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 795 (W.D. Tex. 2015) ("The letter [gave] the Defendant enough information to diagnose the problem. At that point it was the Defendant's responsibility to attempt to cure the violation.").

Bell also invokes the statute's alleged "purposes." Def.'s Mem. Supp. Mot. Dismiss 11, Doc. No. 20. She claims that "[t]he purpose of the notice requirement is to 'provide states in violation of the Act an opportunity to attempt compliance before facing litigation.'" *Id.* (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997)). She then asserts that the Plaintiffs' notice is "too vague to serve [the NVRA's] statutory purposes." *Id.* But "[n]o legislation pursues its purposes at all costs." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525–526 (1987) (per curiam)); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("[I]t is quite mistaken to assume . . . that whatever might appear to further the statute's primary objective must be the law." (internal quotation marks and alterations omitted)). The text of the NVRA puts one duty on potential plaintiffs: to "provide written notice" of "the violation" that they are "aggrieved by." 52 U.S.C. § 20510(b)(1). Since that text is "plain," the Court must "enforce it according to its

6

terms." *United States v. Muhammad*, 16 F.4th 126, 128 (4th Cir. 2021); *see also Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992) ("The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written."). And here, the Plaintiffs satisfied this one pre-suit obligation. Therefore, they have statutory standing.[3]

### B. Article III Standing

Bell argues that the Plaintiffs lack Article III standing because they allege no injury in fact. Def.'s Mem. Supp. Mot. Dismiss 16–19. To have standing, a plaintiff must show that he or she suffered an injury in fact that is "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

The Plaintiffs' allegations satisfy the injury-in-fact requirement. They claim that North Carolina's alleged violations of the NVRA allow ineligible individuals to vote in the state. Am. Compl. ¶ 11. And they contend that such illegitimate votes dilute their own. *Id.* They also claim that North Carolina's "inaccurate rolls" undermine their confidence in the state's elections, which further "burdens their right to vote." *Id.* These alleged harms qualify as injuries in fact:

> Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."

---

[3] The Plaintiffs' notice complains about thirty-six counties. Pls.' Pre-Suit Notice 1, Doc. No. 1-1. Their Complaint mentions forty. Compl. ¶ 3, Doc. No. 1. Bell's Motion to Dismiss does not argue that the Plaintiffs failed to satisfy the notice requirement for the four counties that were not included in their notice but were included in their Complaint. Therefore, Bell waived that argument, and the Court will not analyze the issue at this stage.

7

Case 3:21-cv-00493-RJC-DCK   Document 51   Filed 03/20/23   Page 7 of 14

*Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)); *see also Baker v. Carr*, 369 U.S. 186, 206 (1962) ("[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue."); *cf. Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 332 (1999) ("[T]he threat of vote dilution through the use of sampling is concrete and actual or imminent, not conjectural or hypothetical." (internal quotation marks omitted)).[4]

These injuries are concrete because they have "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts": the deprivation of one's constitutional rights, such as the right to vote. *TransUnion*, 141 S. Ct. at 2204 (internal quotation marks omitted); *see Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798–99 (2021) (explaining that "[a]n early case about voting rights effectively illustrates th[e] common-law understanding" that "every violation imports damage" (citing *Ashby v. White*, 2 Raym. Ld. 938, 941–943, 948, 92 Eng. Rep. 126, 129, 130, 133 (K.B. 1703)); *see also id.* at 800 (explaining that, "at common law," plaintiffs had a legal "remedy" for the violation of "noneconomic rights" like "voting rights").

The injuries are also particularized because the Plaintiffs allege that *their* votes are being diluted and *their* confidence is being undermined, so they are "affect[ed]" in "a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "They are asserting 'a plain, direct and adequate interest in maintaining the effectiveness of their votes,' not merely a claim of 'the right possessed by every citizen to require that the government be administered according to law.'" *Baker*, 369 U.S. at 208 (first quoting *Coleman v. Miller*, 307 U.S. 433, 438 (1939); then

---

[4] *See also Hall v. Virginia*, 385 F.3d 421, 427 n.10 (4th Cir. 2004) (concluding that two plaintiffs "unquestionably ha[d] standing" to claim that their "voting strength" was being "dilute[d]"); *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012) (ruling that an organization had standing because its members were "injured by Indiana's failure to comply with the NVRA list maintenance requirements").

quoting *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922)).

And the Plaintiffs adequately allege that their injuries are actual. They claim that their votes are being diluted now, and they say that their electoral confidence is currently being undermined. Compl. ¶ 11; *see Judicial Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1103–04 (D. Colo. 2021) (concluding that the plaintiffs identified an injury that "already exists" and is not "speculative or hypothetical" when they alleged that "noncompliance with the NVRA undermines the[ir] confidence in the integrity of the electoral process and discourages their participation").

Bell does not dispute that a voter suffers a concrete injury when his or her vote is diluted. Rather, she argues that the Plaintiffs have no "factual basis to support [their] conclusion that ineligible voters diluted their vote in any election." Reply 8, Doc. No. 40. But "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And here, as explained below, the Plaintiffs have "plausibly stated an injury in fact sufficient to establish standing." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

### C. The Plausibility of the Allegations

The Plaintiffs' claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Complaint alleges that at least forty counties in North Carolina have registration rates that are abnormally or impossibly high compared to the rest of the state and the rest of the country. Compl. ¶¶ 3, 34–36, 40. For example, nine counties allegedly have "greater than 100% registration," meaning that there are "more registered voters than eligible voters." *Id.* ¶ 34. Such "unreasonably high registration rate[s]" raise a "strong inference of a violation of the NVRA"— an inference that is strong enough to allow the Plaintiffs to "survive a Rule 12(b)(6) motion." *Martinez-Rivera*, 166 F. Supp. 3d at 805; *see also Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618–620 (E.D.N.C. 2017) (ruling that a plaintiff's

9

allegations, which were based on voter-registration statistics, stated a plausible claim that the defendant failed to make a reasonable effort to conduct voter-list maintenance under the NVRA); *Griswold*, 554 F. Supp. 3d at 1107–09 (same).

Bell attacks the reliability of the Plaintiffs' statistics, and she disputes their significance. But a claim, to be "plausible," must raise only a "reasonable inference" that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiffs' statistics raise such an inference. *See Martinez-Rivera*, 166 F. Supp. 3d at 804–05; *Voter Integrity Project*, 301 F. Supp. 3d at 618–620; *Griswold*, 554 F. Supp. 3d at 1107–09. At the motion-to-dismiss stage, the Plaintiffs need not prove that their claims are "probable" or even "more plausible" than alternative explanations. *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). And because the Court "cannot weigh the facts or assess the evidence at this stage," *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014), the fact-intensive dispute about the accuracy and significance of the Plaintiffs' statistics must be resolved at the summary-judgment stage or at trial. *See Voter Integrity Project*, 301 F. Supp. 3d at 619 ("[W]hile defendant-intervenors have advanced a potentially reasonable explanation for the high registration rate . . . , the validity of that explanation is not appropriate for determination at this early stage of the litigation . . . ."); *Griswold*, 554 F. Supp. 3d at 1107 ("Colorado's registration numbers may not be unreasonably high in context or there may be a reasonable explanation for them . . . . But at the motion to dismiss stage, the Court does not weigh potential evidence that the parties might present at trial . . . ." (internal quotation marks omitted)).

North Carolina law requires the state to conduct voter-list maintenance, *see* N.C. Gen. Stat. § 163-82.14, and Bell claims that the state's compliance with that obligation qualifies it for a "safe harbor" provided in the NVRA, Def.'s Mem. Supp. Mot. Dismiss 21–22 (citing 52 U.S.C.

10

Case 3:21-cv-00493-RJC-DCK   Document 51   Filed 03/20/23   Page 10 of 14

§ 20507(c)(1)). But, at this stage, "the Court has no information about [the state's] compliance" with the procedures required by North Carolina law, and "further development of the record" is needed. *Griswold*, 554 F. Supp. 3d at 1108. Accordingly, the Court is currently unable to determine whether Bell is complying with the NVRA "as a matter of law." Def.'s Mem. Supp. Mot. Dismiss 20; *see Voter Integrity Project*, 301 F. Supp. 3d at 620 ("Given the stage of this proceeding, the court has no information about [the defendant's] compliance with [the required] procedures. Whether [its] compliance is sufficient to satisfy the 'safe harbor' provision is best resolved after further development of the record.").

### D. Motion to Intervene

The Proposed Intervenors have an "interest in ensuring eligible North Carolina voters are able to register to vote, remain registered to vote, and cast a ballot." Mem. Supp. Mot. Interv. 4, Doc. No. 16. Based on this interest, they seek to intervene to "ensure that no voter in North Carolina has his or her registration improperly or illegally canceled." *Id.* at 1. Like Bell, the Proposed Intervenors argue that, in this case, "no . . . court-ordered 'list maintenance' is appropriate under—much less required by—the National Voter Registration Act of 1993." Mot. Interv. 1–2, Doc. No. 15. Also like Bell, they "oppose any requested court-ordered purging of voting rolls in North Carolina, including the 40 North Carolina counties referenced in the Complaint." *Id.* at 1.

Bell and the Plaintiffs agree that the Proposed Intervenors cannot intervene as a matter of right under Rule 24(a). Def.'s Resp. Mot. Interv. 1, Doc. No. 33; Pls.' Resp. Mot. Interv. 5, Doc. No. 25. To show a right to intervene, the Proposed Intervenors must (i) make a timely motion to intervene, (ii) show an interest in the subject of the lawsuit, (iii) show that their interest would be impaired by the lawsuit, and (iv) show that their interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a); *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013).

Here, the Proposed Intervenors have not shown that their interest would be impaired by this litigation, nor have they shown that Bell is unable to adequately represent their interest. Under North Carolina law, Bell is "responsible for coordination of State responsibilities under the National Voter Registration Act," N.C. Gen. Stat. § 163-82.2, and she is entrusted with ensuring that North Carolina's "[l]ist maintenance" program "compl[ies] with the provisions of the . . . National Voter Registration Act," *id.* § 163-82.14(a). She is therefore authorized to further and protect the interest that North Carolina voters have in the enforcement of the NVRA. While the Proposed Intervenors also claim an interest in ensuring such compliance, there is no reason to conclude that Bell, who is represented by the North Carolina Attorney General, is unable to litigate this case in a way that protects that interest. Thus, the Proposed Intervenors fail to carry their "minimal" burden of showing representational inadequacy. *United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987).

The Proposed Intervenors are unable to intervene as of right for another distinct and independent reason. Bell and the Proposed Intervenors share "the same ultimate objective," so there is a "presumption" that the Proposed Intervenors' "interests are adequately represented" by Bell. *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). To overcome this presumption, the Proposed Intervenors must "demonstrate adversity of interest, collusion, or nonfeasance." *Id.* What's more, the Proposed Intervenors here must make "a strong showing" on this point because Bell is a governmental defendant. *Stuart*, 706 F.3d at 352; *see N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 169 (M.D.N.C. 2019) ("[W]here the State, represented by the Attorney General, is defending [a] lawsuit, Proposed Intervenors must 'mount a strong showing of inadequacy' to overcome the presumption of adequate representation." (quoting *Stuart*,

12

706 F.3d at 352)).[5] The Proposed Intervenors fail to make such a showing. "[I]t is the government's basic duty to represent the public interest," including voters' interest in the enforcement of the NVRA, *Stuart*, 706 F.3d at 351, and the Proposed Intervenors identify no "adversity of interest, collusion, or nonfeasance" that would undermine the adequacy of governmental representation in this case, *Westinghouse*, 542 F.2d at 216.

Nor will the Court exercise its discretion to permit the Proposed Intervenors to intervene under Rule 24(b). The Proposed Intervenors' participation would needlessly complicate this litigation, "consum[ing] additional resources of the court and the parties," without any corresponding benefit. *Stuart*, 706 F.3d at 355. Since Bell is "zealously pursuing the same ultimate objectives" as the Proposed Intervenors, *id.*, their intervention is "likely only to result in duplicative briefing," *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 31 (S.D.W. Va. 2015) (alteration omitted). Thus, permitting the Proposed Intervenors' intervention would "unduly delay" the "adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

---

[5] In *Berger v. North Carolina State Conference of the NAACP*, the Supreme Court recognized that "the Fourth Circuit has endorsed a presumption of adequate representation where a member of the public seeks to intervene to defend a law alongside the government." 142 S. Ct. 2191, 2204 (2022). The Court there did "not decide whether a presumption of adequate representation might sometimes be appropriate" in such a situation. *Id.*

13

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The M&R (Doc. No. 44) is **NOT ADOPTED**.

2. The Motion to Dismiss (Doc. No. 19) is **DENIED**.

3. The Motion to Intervene (Doc. No. 15) is **DENIED**.

Signed: March 19, 2023

Robert J. Conrad, Jr.
United States District Judge